Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

Laurel N. Holmes (SBN 308515)
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
300 S Grand Avenue, Suite 2700
Los Angeles, California 90071
Tel: (213) 835-1550
Fax: (415) 421-7105
lholmes@schneiderwallace.com

*Attorneys for Plaintiff and the Putative Class,
and on behalf of the State of California and
aggrieved employees*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATOYA HONEY WALKER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>NURSEFINDERS, LLC; AMN SERVICES, LLC; and DOES 1–100, inclusive.<br><br>Defendants. | Case No. 3:22-CV-04084-AGT<br><br>*Assigned to the Honorable Alex G. Tse*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        July 26, 2024<br>Time:       10:00 a.m.<br>Courtroom:   A, 15th Floor<br><br>Complaint Filed:   July 12, 2022<br>Trial Date:       None Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on July 26, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Alex G. Tse of the above-captioned court, Plaintiff LaToya Honey Walker, on behalf of herself and all others similarly situated ("Plaintiff"), will and hereby does move the Court for final approval of the Class Action and PAGA[1] Settlement Agreement and Release ("Settlement"),[2] which the Court preliminarily approved on March 4, 2024. (ECF No. 51). The Settlement resolves all of the claims in this action on a class and representative basis. In particular, Plaintiff moves for an order:

(1)    Granting final approval of the Settlement as to the Class[3] and Aggrieved Employees;

(2)    Approving the Settlement apportionment;

(3)    Finally certifying the Class for settlement purposes;

(4)    Finally approving Schneider Wallace Cottrell Konecky LLP ("SWCK") as Class Counsel;

(5)    Finally appointing and approving Plaintiff as Class Representative;

(6)    Finally appointing and approving Phoenix Class Action Administration Solutions ("Phoenix") as Settlement Administrator and the costs of settlement administration in the amount of $26,750.00;

(7)    Finally approving Class Counsel for a fee award of $1,500,000.00, representing thirty percent (30%) of the Gross Settlement Amount;

(8)    Finally, approving Class Counsel for litigation costs of $8,990.63; and

(9)    Finally approving the proposed implementation schedule set forth herein and in the proposed Final Approval Order and Judgment submitted herewith.

Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e) and Cal. Lab. Code § 2699(l)(2).

---

[1] "PAGA" means the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.*

[2] The Settlement is attached as **Exhibit 1** to the Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Cottrell Prelim. Decl.") (ECF No. 49-1).

[3] Unless otherwise indicated, capitalized terms have the meanings given to them in the Settlement.

1    The Motion is based on this notice and the following Memorandum of Points and Authorities; the

2    Cottrell Prelim Decl. (ECF No. 49-1); the accompanying Declaration of Taylor Mitzner (Settlement

3    Administrator, Phoenix) ("Mitzner Decl."); the accompanying Declaration of Carolyn H. Cottrell

4    ("Cottrell Final Decl."); the accompanying Declaration of Joanna Ghosh ("Ghosh Decl."), all other

5    records, pleadings, and papers on file in this action, and such other evidence or argument as may be

6    presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Final Approval

7    Order and Judgment with her moving papers.

8

9    Date: July 12, 2024                    Respectfully Submitted,

10

11                                           */s/ Carolyn H. Cottrell*
                                            Carolyn Hunt Cottrell
12                                          Ori Edelstein
                                            Laurel N. Holmes
13                                          **SCHNEIDER WALLACE**
                                            **COTTRELL KONECKY LLP**
14
                                            *Attorneys for Plaintiff and the Putative Class,*
15                                          *and on behalf of the State of California*
                                            *and aggrieved employees*
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2   I.   INTRODUCTION ................................................................................. 1

3   II.  FACTUAL AND PROCEDURAL BACKGROUND ................................ 1

4        A.   Notice of Settlement and Response of Class Members .......................... 2

5
6   III. TERMS OF THE SETTLEMENT ......................................................... 3

7        A.   Basic Terms and Value of the Settlement ............................................. 3

8        B.   Class and Aggrieved Employee Definitions ......................................... 5

9        C.   Allocation and Awards ....................................................................... 5

10       D.   Scope of Release ................................................................................ 6

11  IV.  ARGUMENT ....................................................................................... 7

12
13       A.   Class-Action Settlements are Favored in the Ninth Circuit. ................. 7

14       B.   The Best Practicable Notice was Provided to the Class Members. ....... 8

15       C.   The Settlement Warrants Final Approval. ............................................ 8

16            1.   The Settlement is Entitled to a Presumption of Fairness Because it
17                 Resulted from Informed, Non-Collusive, Arm's Length Negotiation. ........... 9

18            2.   The Class Members Support the Settlement. ................................... 9

19            3.   The Action Involves Specific Risks and the Possibility of Extensive
20                 Further Litigation. ...................................................................... 10

21            4.   The Settlement Amount Favors Final Approval. ............................. 11

22            5.   The Parties Engaged in Significant Informal Discovery, Enabling
23                 Them to Make Informed Decisions Regarding Settlement ........................ 12

24            6.   Class Counsel are Highly Experienced. ......................................... 12

25       D.   The Court Should Finally Certify the Class. ....................................... 13

26       E.   The Settlement Provides a Fair and Reasonable Resolution for the State
27            of California and the Aggrieved Employees ........................................ 14
28

F.    The Requested Attorneys' Fees and Costs are Reasonable. .................................. 15

    1.    Class Counsel's Fee Request is Fair and Reasonable and Merits Upward Adjustment from the 25% "Benchmark." ...................................................16

    2.    The Results Achieved Support the Fee Request. ...........................................17

    3.    The Risks of Continued Litigation were Substantial. ...................................18

    4.    Class Counsel have Demonstrated Skill Based on Experience in this Area of Law and Dedication Throughout this Litigation..............................18

    5.    Class Counsel Showed Dedication to the Class Through Accepting and Prosecuting the Action on a Contingency Basis. ...........................................18

    6.    Class Counsel's Request for a Percentage of the Common Fund is Consistent With Awards Common to This Type of Public Interest Litigation. .............19

    7.    The Reaction of the Class Supports the Requested Award...........................20

    8.    A Lodestar Crosscheck, if Applied, Would Reflect the Efficiency of this Early Resolution. ..............................................................................21

    9.    The Court Should Approve Class Counsel's Costs. ....................................22

G.    The Court Should Approve the Proposed Schedule. ........................................... 23

V.    CONCLUSION ...................................................................................................... 23

1

## TABLE OF AUTHORITIES

2

## CASES

3

*Balderas v. Massage Envy Franchising, LLC*,

4

No. 12-cv-06327-NC, 2014 U.S. Dist. LEXIS 99966

5

(N.D. Cal. July 21, 2014) .................................................................................................. 11

6

*Barnes v. The Equinox Grp., Inc.*,

No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088

7

(N.D. Cal. Aug. 1, 2013) ................................................................................................... 16

8

*Bell v. Consumer Cellular, Inc.*,

9

No. 3:15-cv-941-SI, 2017 U.S. Dist. LEXIS 95401

10

(D. Or. June 21, 2017) ...................................................................................................... 12

11

*Benton v. Telecom Network Specialists, Inc.*,

220 Cal.App.4th 701 (2014) ............................................................................................. 14

12

*Boyd v. Bechtel Corp.*,

13

485 F.Supp. 610 (N.D. Cal. 1979) .................................................................................... 12

14

*Brown v. Papa Murphy's Holdings Inc.*,

15

No. C19-5514 BHS, 2022 U.S. Dist. LEXIS 79209

16

(W.D. Wa. May 2, 2022) ................................................................................................... 19

17

*California v. eBay, Inc.*,

No. 5:12-cv-05874-EJD, 2015 U.S. Dist. LEXIS 118060

18

(N.D. Cal. Sept. 3, 2015) .................................................................................................. 17

19

*Carlin v. DairyAmerica, Inc.*,

20

380 F.Supp.3d 998 (E.D. Cal. 2019) ................................................................................ 17

21

*Carter v. Anderson Merchandisers, LP*,

22

No. EDCV 08-0025-VAP OPX, 2010 U.S. Dist. LEXIS 7793

(C.D. Cal. Jan. 27, 2010) .................................................................................................. 12

23

*Churchill Village, LLC. v. Gen. Elec.*,

24

361 F.3d 566 (9th Cir. 2004) .............................................................................................. 8

25

*Class Plaintiffs v. City of Seattle*,

26

955 F.2d 1268 (9th Cir. 1992) ............................................................................................ 6

27

28

*Cody v. Hillard,*
    88 F.Supp.2d 1049 (D.S.D. 2000) .................................................................. 9

*Cuellar v. First Transit Inc.,*
    No. 8:20-cv-01075-JWH-JDE, 2024 U.S. Dist. LEXIS 3747
    (C.D. Cal. Jan. 8, 2024) ................................................................................ 21

*Flores v. ADT LLC,*
    No. 1:16-cv-0029-AWI-JLT, 2018 U.S. Dist. LEXIS 31784
    (E.D. Cal. Feb. 27, 2018) .............................................................................. 17

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) ........................................................................ 6

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482
    (N.D. Cal. Apr. 22, 2010) ............................................................................. 18

*Gomez v. H & R Gunlund Ranches,*
    No. CV F 10-1163 LJO MJS, 2011 U.S. Dist. LEXIS 135424
    (E.D. Cal. Nov. 22, 2011) ............................................................................. 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................... 7, 9, 16, 21

*Haralson v. U.S. Aviation Servs. Corp.,*
    383 F.Supp.3d 959 (N.D. Cal. 2019) ......................................................... 14, 15

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ............................................................................ 22

*Hightower v. JPMorgan Chase Bank, N.A.,*
    No. CV 11-1802 PSG (PLAx), 2015 U.S. Dist. LEXIS 174314
    (C.D. Cal. Aug. 4, 2015) .......................................................................... 16, 18

*In re Am. Bank Note Holographics, Inc.,*
    127 F.Supp.2d 418 (S.D.N.Y. 2001) ............................................................... 9

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.,*
    289 F.R.D. 526 (N.D. Cal. 2012) .................................................................. 10

*In re Immune Response Sec. Litig.,*
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ............................................................ 23

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)........................................................................... 11

*In re Omnivision Techs., Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ............................................................ 16

*In re Pacific Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)............................................................................. 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)........................................................................... 8

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219
    (N.D. Cal. May 11, 2018) ............................................................................... 21

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),
    654 F.3d 935 (9th Cir. 2011) .......................................................................... 12

*Jones v. San Diego Metro. Transit Sys.*,
    No. 3:14-cv-01778-KSC, 2017 U.S. Dist. LEXIS 198284
    (S.D. Cal. Nov. 30, 2017) ............................................................................... 16

*Jordan v. NCI Grp., Inc.*,
    EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297
    (C.D. Cal. Jan. 5, 2018) .................................................................................. 15

*Kilbourne v. Coca-Cola Co.*,
    No. 14CV984-MMA BGS, 2015 U.S. Dist. LEXIS 118756 (S.D. Cal. July 29, 2015) ................ 10

*Kim v. Space Pencil, Inc.*,
    No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922
    (N.D. Cal. Nov. 28, 2012)................................................................................ 21

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal.5th 480 (2016) ....................................................................................... 20

*Mandujano v. Basic Vegetable Prods., Inc.*,
    541 F.2d 832 (9th Cir. 1976) ........................................................................ 8, 9

*McKenzie v. Fed. Express Corp.*,
    No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666
    (C.D. Cal. July 2, 2012) .................................................................................. 17

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
618 F.3d 988 (9th Cir. 2010) ............................................................... 15

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) .......................................................... 12

*Mossberg v. Indymac Fin.*,
No. CV07-1635-GW(VB1(x), 2013 U.S. Dist. LEXIS 205686
(C.D. Cal. Jan 28, 2013) ....................................................................... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 20

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................ 7, 8, 11

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974) .............................................................. 17

*Parkinson v. Hyundai Motor Am.*,
796 F.Supp.2d 1160 (C.D. Cal. 2010) .................................................. 16

*Pena v. Taylor Farms Pac., Inc.*,
No. 2:13-cv-01282-KJM-AC, 2021 U.S. Dist. LEXIS 45326
(E.D. Cal. Mar. 10, 2021) ...................................................................... 19

*Perkins v. Singh*,
No. 3:19-cv-01157-AC, 2021 U.S. Dist. LEXIS 211578
(D. Or. Nov. 2, 2021) ............................................................................. 19

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ............................................................... 16

*Ramirez v. Benito Valley Farms, LLC*,
Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272
(N.D. Cal. Aug. 25, 2017) ...................................................................... 15

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ............................................................................... 19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................. 11

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270
   (E.D. Cal. Nov. 13, 2007) ........................................................................ 19

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020) ............................................................. 20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................. 15, 16

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................ 8

*Tuttle v. Audiophile Music Direct*,
   No. C22-1081JLR, 2023 U.S. Dist. LEXIS 229241
   (W.D. Wash. Dec. 26, 2023) ...................................................................... 22

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019) ................................................................ 8

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) ............................................................ 19

*Vasquez v. Coast Valley Roofing*,
   266 F.R.D. 482 (E.D. Cal. 2010) .............................................................. 16

*Vianu v. AT&T Mobility LLC*,
   No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520
   (N.D. Cal. Nov. 8, 2022) ............................................................................ 22

*Viceral v. Mistras Grp., Inc.*,
   No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759
   (N.D. Cal. Oct 11, 2016) ............................................................................ 11

*Villafan v. Broadspectrum Downstream Servs.*,
   No. 18-cv-06741-LB, 2020 U.S. Dist. LEXIS 218152
   (N.D. Cal. Nov. 20, 2020) .......................................................................... 10

*Vizcaino v. Microsoft Corp.*,
   290 F. 3d 1043 (9th Cir. 2002) ............................................................ passim

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667
   (N.D. Cal. Apr. 1, 2011) ................................................................... 8, 9, 12

*Yokoyama v. Midland Nat'l. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................................... 14

*York v. Starbucks Corp.*,
    No. CV 08-07919 GAF PJWX, 2011 U.S. Dist. LEXIS 155682
    (C.D. Cal. Nov. 23, 2011)....................................................................................... 10

**STATUTES**

29 U.S.C. § 216(b) ........................................................................................................ 22

Cal. Code Civ. Proc. § 384(b) ...................................................................................... 6

Fed. R. Civ. P. 23.......................................................................................................... 11

Fed. R. Civ. P. 23 (b) .................................................................................................... 13

Fed. R. Civ. P. 23(a) ..................................................................................................... 13

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 13

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 13

Fed. R. Civ. P. 23(e) ..................................................................................................... 7

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 8

Fed. R. Civ. P. 23(h) ..................................................................................................... 15

**TREATISES**

*Manual for Complex Litigation, Judicial Role in Reviewing a
    Proposed Class Action Settlement* (4th ed.).......................................................... 7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiff LaToya Honey Walker achieved an excellent non-reversionary $5,000,000.00 class and PAGA action Settlement on behalf of Defendant's hourly, non-exempt employees. Notice has been disseminated pursuant to the Court's preliminary approval order (ECF No. 51), and the response of the Class Members has been highly favorable. Plaintiff now seeks final approval to effectuate the Settlement and bring closure to two years of intensive litigation.

The Settlement resolves the claims of 3,139 Participating Class Members and the 2,327 Aggrieved Employees for a non-reversionary Gross Settlement Amount of $5,000,000.00.[1] This negotiated amount provides substantial recoveries to the Class Members and the Aggrieved Employees. This achieves a favorable result for the Participating Class Members and Aggrieved Employees of thousands of wage-and-hour claims unlikely to have been prosecuted as individual actions. The approximate average gross recovery is $1,398.21 per Class Member and the approximate average net recovery is $1,081.00 per Class Member. The highest award to be paid is approximately $9,091.20.[2]

These robust recoveries resulted in an overwhelmingly positive response to the Settlement and confirm that the Settlement is fair, reasonable, and adequate in all respects. To date, only one Class Member (approximately 0.003%) has objected to the amount of her anticipated Settlement Award allocation, and only two Class Members (approximately 0.006%) have requested exclusion. Given the positive response of the Class, among other reasons discussed below, Class Counsel respectfully submits that the Court should approve the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court granted preliminary approval of the $5,000,000.00 non-reversionary Settlement on March 4, 2024. (ECF No. 51). The procedural and factual history of this Action is well-documented

---

[1] Plaintiff's initial estimate of the class size, in Plaintiff's Motion for Preliminary Approval, of 2,919 was based on a total number of employees through June of 2023. The increase to 3,139 represents the actual number of Participating Class Members. (Mitzner Decl., ¶ 14.) Of the 2,327 Aggrieved Employees only four hundred thirty-nine (439) are not also Participating Class Members.

[2] Declaration of Taylor Mitzner ("Mitzner Decl."), ¶ 14.

1   in Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Preliminary

2   Approval Motion") (ECF No. 49) and the Cottrell Prelim. Decl. (ECF No. 49-1 or "Cottrell Prelim.

3   Decl.") For purposes of this motion, Plaintiff focuses on the notice process, administration, and class

4   response.

5           **A.      Notice of Settlement and Response of Class Members**

6           Following the Court's preliminary approval order, the Settlement Administrator, Phoenix Class

7   Action Administration Solutions ("Phoenix"), received from Defendant the Class List, which

8   contained each Class Member and/or Aggrieved Employee's name, last-known mailing address, last-

9   known telephone number (if any), social security number, and the total number of applicable

10  workweeks that each Class Member and/or Aggrieved Employee worked in California during the

11  relevant periods.[3] (*See* Mitzner Decl., ¶ 3; Settlement, ¶ 31). On April 1, 2024, Phoenix disseminated

12  the Notice of Class Action Settlement ("Settlement Notice") via U.S. mail to 3,578 identified

13  recipients. (Mitzner Decl., ¶ 5).

14          The Settlement Notice informed the Class Members and/or Aggrieved Employees of the

15  Settlement terms; their expected Settlement Awards; the deadline for Class Members to submit

16  objections, requests for exclusion, and workweek disputes; the July 26, 2024 final approval hearing;

17  the names and contact information for Class Counsel and Defendant's Counsel; and that Plaintiff

18  would seek attorneys' fees, costs, and a service award and the corresponding amounts. (Cottrell Final

19  Decl., ¶ 4). In its preliminary approval order, the Court approved the Settlement Notice, finding that it

20  "and the related notification procedure contemplated by the Settlement constitute the best notice

21  practicable under the circumstances and are in full compliance with the applicable laws and the

22  requirements of due process." (ECF No. 51, ¶ 7).

23          Defendant's counsel confirmed via email that on March 15, 2024, they had mailed CAFA

24  Notices on behalf of Defendant to the appropriate government officials in the states in which Class

25  Members reside, based on the Class List. (Cottrell Final Decl., ¶ 13).

26

27  _____

28  [3] The Class Release Period is July 12, 2018 through March 4, 2024. (Settlement, ¶ 2(h)). The PAGA
    Release Period is July 12, 2021 through March 4, 2024. (*Id.* at ¶ 2(z)).

As of July 12, 2024, thirty (30) Settlement Notices had been returned as undeliverable without a forwarding address, but Phoenix performed skip-tracing to identify alternative mailing addresses, and all 30 returned Settlement Notices were successfully remailed. (Mitzner Decl., ¶ 6). The deadline for Class Members to opt out, object, and dispute their reported workweeks expired on May 17, 2024. (*Id.* at ¶ 9). To date, only one objection has been filed, only one pay period dispute has been received, and only two Class Members have requested exclusion from the Settlement. (*Id.*)

In addition to distributing the Settlement Notice, Phoenix was and will be responsible for: (i) preparing, printing, and mailing the Settlement Notice; (ii) responding to inquiries from Class Members; (iii) establishing a website at nursefindersettlement.phoenixcases.com for Class Members to view case-related documents and deadlines; (iv) determining the validity of letters indicating a request to be excluded from the Class Settlement, written objections to the Settlement, and/or disputes regarding the number of pay periods submitted by Class Members; (v) calculating the Net Settlement Amount and the Individual Settlement Shares to Class Members and Aggrieved Employees; (vi) calculating and issuing the Individual Settlement Shares and distributing them to Participating Class Members and the Individual PAGA Payments to Aggrieved Employees; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the service award to Plaintiff, and the employer/employee payroll taxes to the appropriate taxing authorities; and (viii) such other tasks necessary to administer the Settlement. (Mitzner Decl., ¶ 2; ECF No. 49, § III.E).

## III.    TERMS OF THE SETTLEMENT

### A.    Basic Terms and Value of the Settlement

Defendant has agreed to pay a non-reversionary Gross Settlement Amount of $5,000,000.00 to settle the case, plus any employer payroll taxes on the portion of Settlement Awards allocated as wages, which shall be separately paid by Defendant. (Settlement, ¶ 2(q)).[4] The parties have agreed that 25% of each Settlement Award will be allocated as wages, and 75% of each Settlement Award will be allocated as penalties and interest. (*Id.* at ¶ 34).

---

[4] The Settlement's escalator clause indicates if the total pay periods exceed 78,247 by more than 10%, Defendant would have the option to either increase the Gross Settlement Amount proportionately or shorten the Class Period. The total pay periods did not exceed this total, so the escalator clause was not triggered. (Mitzner Decl., ¶ 12; Settlement, ¶ 26(a)).

The anticipated Net Settlement Amount, of approximately $3,393,250.00 which will be available to pay Settlement Awards to the Participating Class Members and Aggrieved Employees, is defined as the portion of the Gross Settlement Amount remaining after the deduction of Plaintiff's service award ($10,000.00), Class Counsel's attorneys' fees and costs ($1,500,000.00 in fees[5] and $20,000.00 in costs[6]), settlement administration costs ($26,750.00), the LWDA PAGA Payment for its 75% share of PAGA penalties ($37,500.00), and the Net PAGA Amount to be distributed to the Aggrieved Employees ($12,500.00).  (Settlement, ¶¶ 2(t), (v), (w)). (Mitzner Decl., ¶ 13).

The Gross Settlement Amount, $5,000,000.00 is a negotiated amount that resulted only after arm's-length negotiations following a full-day mediation session with a well-respected mediator as well as significant investigation and analysis by Plaintiff's counsel. (Cottrell Prelim. Decl., ¶ 31). Plaintiff's counsel based their damages analysis on informal discovery, including a 20% sampling of payroll and timekeeping data, Defendant's meal and rest break policies, and interviews with Class Members. (*Id.* at ¶¶ 9–11, 23, 27).

The negotiated non-reversionary Gross Settlement Amount of $5,000,000.00 represents approximately 42% of the $11,946,406 total that Plaintiff calculated for the core claims for unpaid meal and rest premiums and unpaid wages and business expenses. As discussed in detail in Plaintiff's motion for preliminary approval, Plaintiff and her counsel considered the significant risks of continued litigation when evaluating the proposed Settlement. (Cottrell Prelim. Decl., ¶ 31). These risks were substantial, particularly given the nature of the off-the-clock work and that the Class Members work in separate facilities throughout California. (*Id.*) In contrast, the Settlement will result in immediate and certain payment to the Class Members and Aggrieved Employees of meaningful amounts. (*Id.*) As noted above, the Settlement yields an average gross recovery of $1,398.21 and an average net Individual Settlement Share of $1,081.00. (Mitzner Decl., ¶ 14). The highest Individual Settlement Share to be paid is approximately $9,091.20. (*Id.*) These amounts provide significant compensation to

---

[5] Although the Settlement Agreement permits Class Counsel to seek up to one third the settlement in fees, in the interest of a reasonable request, Class counsel only seeks 30% of the Gross Settlement in fees.

[6] For the purposes of calculations, the settlement administrator used the amount allocated to costs in the settlement award, $20,000, however as discussed here in the actual costs are lower. This will lead to a very slight increase in the total available for distribution.

1  the Participating Class Members and Aggrieved Employees, and the Settlement provides an excellent

2  recovery in the face of expansive and uncertain litigation. (Cottrell Prelim. Decl., ¶ 32). In light of all

3  the risks, the settlement amount is fair, reasonable, and adequate.

4      **B.    Class and Aggrieved Employee Definitions**

5      Plaintiff brought, and settled, this Class and PAGA action on behalf of herself, the State of

6  California, and similarly situated employees.  There are 3,139 Participating Class Members. [7] (Mitzner

7  Decl., ¶ 11).  These current and former hourly, non-exempt employees who worked for Defendant in

8  the state of California, excluding those individuals who signed an arbitration agreement, during the

9  time period between July 12, 2018 and March 4, 2024 are the Participating Class Members.

10 (Settlement, ¶ 2(c)).

11     The Aggrieved Employees are defined as all individuals who worked as hourly, non-exempt

12 employees for Defendant in the State of California at any time between July 12, 2021 and March 4,

13 2024. (Settlement, ¶ 2(b)). There are two thousand three hundred twenty-seven (2,327) Aggrieved

14 Employees of whom four hundred thirty-nine (439) are Aggrieved Employees only and not Settlement

15 Class Members. (Mitzner Decl., ¶ 15).

16     **C.    Allocation and Awards**

17     The anticipated Net Settlement Amount to be paid to Participating Class Members is

18 $3,393,250. (Mitzner Decl., ¶ 13). Participating Class Members will receive a Settlement Award check

19 without the need to submit a claim form. (*See* Settlement, ¶¶ 29, 30). Participating Class Members will

20 be eligible to receive one share of the Net Settlement Amount per workweek based on their *pro rata*

21 percentage of pay periods worked in California between July 12, 2018 and March 4, 2024. (*Id.* at ¶

22 31(a)). Likewise, Aggrieved Employees will be eligible to receive one share of the Net PAGA Amount

23 based on their *pro rata* percentage of pay periods worked in California between July 12, 2021 and

24 March 4, 2024. (*Id.* at ¶ 31(b)).

25     The Settlement Administrator will mail all Settlement Awards and Individual PAGA Payments

26 to Participating Class Members and/or Aggrieved Employees within thirty (30) days after the Effective

27

28

---

[7] Phoenix mailed the Class Notice to 3,141 Class Members, and two individuals submitted valid requests for exclusion, leaving 3139 Participating Class Members. (Mitzner Decl., ¶¶ 5, 8).

1    Date or as soon as reasonably practicable.[8] (Settlement, ¶ 37). Settlement Award checks will remain

2    valid for 180 days from the date of their issuance, and the face of each check will prominently display

3    the date on which the check will be voided. (Settlement, ¶ 38). The Settlement Administrator will

4    cancel any check not cashed within that time and will promptly send a replacement check to any

5    Participating Class Member and/or Aggrieved Employee whose original check was lost or misplaced,

6    if requested by the individual prior to the void date. (*Id.*) With 90 days remaining in the 180-day check-

7    cashing period, the Settlement Administrator will also send a reminder letter (as filed in the record at

8    ECF No. 49-2, p. 39) via U.S. mail to those who have not yet cashed their Settlement Award or

9    Individual PAGA Payment check. (Settlement, ¶ 38).

10        The Settlement Administrator will transmit any funds that remain from checks that are returned

11   as undeliverable or are not negotiated after the 180-day check cashing period to the California

12   Controller's Unclaimed Property Fund, in the name of the relevant Class Member(s) and/or Aggrieved

13   Employee(s), thereby leaving no "unpaid residue" subject to the requirements of Cal. Code Civ. Proc.

14   § 384(b). (Settlement, ¶ 38).

15        **D.    Scope of Release**

16        Upon final approval by the Court, and subject to the exclusions described below, each

17   Participating Class Member will fully release all claims that were raised in the action and all claims

18   that could have been brought based on the facts alleged in the Complaints, between July 12, 2018 and

19   March 4, 2024. (Settlement, ¶ 16(a)). Aggrieved Employees will also be deemed to have released

20   PAGA claims that were or could have been brought based on the facts alleged in the Complaints or

21   PAGA letter, between July 12, 2021 and March 4, 2024. (*Id.* at ¶ 16(b)). Plaintiff has also agreed to a

22   general release from all known and unknown claims she may have against the Released Parties through

23   March 4, 2024.[9] (*Id.* at ¶ 18).

24

---

25   [8] "Effective Date" means (i) if there is an objection to the settlement that is not subsequently
     withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order;
26   or (ii) if there is a timely objection and appeal, then after such appeal is dismissed or the Court's Final
     Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if
27   any objections which were filed are withdrawn before the date of final approval, then the first business
     day after the Court's order granting Final Approval of the Settlement. (Settlement, ¶ 2(l)).

28   [9] "Released Parties" is defined in the Settlement at ¶ 2(dd).

1    **IV.    ARGUMENT**

2        **A.    Class-Action Settlements are Favored in the Ninth Circuit.**

3        The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions.

4    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Franklin v. Kaypro*

5    *Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and

6    quieting litigation. This is particularly true in class action suits.") However, a class action may not be

7    settled without Court approval. *See* Fed. R. Civ. P. 23(e). When reviewing a motion for approval of a

8    class-action settlement, the Court should give due regard to "what is otherwise a private consensual

9    agreement negotiated between the parties" and should therefore limit the inquiry "to the extent

10   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

11   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

12   reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

13   625 (9th Cir. 1982).

14       Approval of a class-action settlement requires three steps: (1) preliminary approval of the

15   proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class

16   members; and (3) a final settlement approval hearing at which objecting class members may be heard,

17   and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the

18   settlement is presented. *Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class*

19   *Action Settlement*, § 21.61 (4th ed.) The decision to approve or reject a proposed settlement is

20   committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

21   (9th Cir. 1998).

22       In its March 4, 2024 Order, the Court granted preliminary approval and preliminarily certified

23   the Class for settlement. (ECF No. 51). Defendant does not oppose final certification of the Class for

24   settlement purposes or final approval and enforcement of the Settlement. (*See* Settlement, ¶¶ 11, 19,

25   24). Accordingly, the next step is final approval of the Settlement which will permit the Class Members

26   and Aggrieved Employees to receive their allocated awards. Final approval should be granted for the

27   reasons discussed below.

28

**B.    The Best Practicable Notice was Provided to the Class Members.**

Pursuant to the Court's preliminary approval order, Phoenix sent the Court-approved Settlement Notice to the Class Members in accordance with the terms of the Settlement. (*See* Mitzner Decl., ¶ 5). Phoenix sent 3,578 Notices via U.S. Mail to ) Class Members and Aggrieved Employees, with 30 Class Notices successfully re-mailed as a result of thorough skip tracing efforts. (*Id.* at ¶ 5-6).

A notice of a class-action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan, and reasonable steps have been taken to ensure that all Class Members received the Settlement Notice. Of the 3,578 notices distributed via U.S. Mail, zero remained undeliverable following skip-tracing and other techniques to verify current mailing addresses. (Mitzner Decl., ¶ 7). The Settlement Notices provided reasonable estimates of Class Members' recovery, in addition to considerable information about the case and the Settlement. (ECF No. 49-2). Accordingly, the notice process was effective and satisfies the "best practicable notice" standard, as the Court has already determined. (*See* ECF No. 51, ¶ 7).

**C.    The Settlement Warrants Final Approval.**

To finally approve a proposed class-action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625; *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Importantly, courts apply a presumption of fairness where,

as here, "the settlement is recommended by class counsel after arm's length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, as discussed below, and in Plaintiff's motion for preliminary approval, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as to the Class and Aggrieved Employees.

### 1. The Settlement is Entitled to a Presumption of Fairness Because it Resulted from Informed, Non-Collusive, Arm's Length Negotiation.

Courts routinely presume a settlement is fair where it is reached through arm's length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 U.S. Dist. LEXIS 38667 at *20. Here, the Settlement was the product of non-collusive, arm's-length negotiations, as the Court has already determined. (ECF No. 51, ¶ 2; *see also* Cottrell Prelim. Decl., ¶¶ 13–15). The Settlement was reached after a full-day mediation on September 8, 2023 with experienced mediator, Steve Pearl. (Cottrell Prelim. Decl., ¶ 13). Although the parties did not reach a deal the day of the mediation, they continued negotiating afterwards and subsequently agreed to the mediator's proposal, which included the substantive terms of the Settlement, on September 26, 2023. (*Id.*)

The parties then spent several months negotiating the Settlement, with several rounds of edits related to its terms and details. (Cottrell Prelim. Decl., ¶ 14). The parties ultimately executed the Settlement on January 19, 2024. (*Id.*) Discovery, pre-mediation information production, and mediation were all conducted at arm's length and with zealous advocacy. Plaintiff is represented by experienced and respected litigators of representative wage-and-hour actions, and these attorneys feel strongly that, based on the specific risks associated with this case, the Settlement achieves an excellent result for the Class Members. (*Id.* at ¶¶ 6-8).

### 2. The Class Members Support the Settlement.

The Ninth Circuit courts make clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance in determining whether to approve a settlement. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127

1   F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement

2   is perhaps the most significant factor to be weighed in considering its adequacy.") Courts have found

3   that a relatively low percentage of objectors or opt outs is a very strong indicator of fairness that weighs

4   heavily in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059–60 (D.S.D. 2000)

5   (approving the settlement in large part because only 3% of the apparent class had objected to the

6   settlement).

7          To date, with the notice period closed, one Class Member has objected to the amount of her

8   calculated Settlement award. The concern over the amount stems from the individual wanting a full

9   measure of the damages she alleges to have suffered rather than a negotiated compromise.

10  Additionally, only a tiny fraction of the Class, two Class Members (approximately 0.006%), have

11  opted out. (Mitzner Decl., ¶¶ 8-9). This indicates widespread support for the Settlement among Class

12  Members and weighs heavily in favor of final approval.

13        **3.  The Action Involves Specific Risks and the Possibility of Extensive Further**

14            **Litigation.**

15         As the Court noted in its preliminary approval order, "settlement at this time will avoid

16  substantial costs, delay, and risks that would be presented by the further prosecution of the litigation."

17  (ECF No. 51, ¶ 2). Specifically, off-the-clock claims may pose difficulty to certify for class treatment.

18  As the nature, cause, and amount of the off-the-clock work may vary based on the individualized

19  circumstances of the worker, where Class Members carried many different job titles and worked at

20  several facilities throughout California, this could be a significant hurdle. Where Class Members were

21  often required to complete their time punches via handwritten timesheets obtaining reliable class wide

22  information for off the clock claims can be problematic.[10] Plaintiff would face fundamental logistical

23  difficulties in reviewing and analyzing the massive amounts of hard-copy records necessary to provide

24

25

26  [10] *See, e.g., Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2020 U.S. Dist.
    LEXIS 218152, at *15 (N.D. Cal. Nov. 20, 2020) (citing *In re AutoZone, Inc., Wage & Hour Emp't*
27  *Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012)); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-
    MMA BGS, 2015 U.S. Dist. LEXIS 118756, at *45–46 (S.D. Cal. July 29, 2015); *York v. Starbucks*
28  *Corp.*, No. CV 08-07919 GAF PJWX, 2011 U.S. Dist. LEXIS 155682, at *83–87 (C.D. Cal. Nov. 23,
    2011).

1    evidence that Defendant, indeed, failed to pay Class members wages for all worked hours during the

2    relevant period. (Cottrell Prelim. Decl., ¶ 34).

3            In addition, certification of off-the-clock work claims is complicated by a lack of documentary

4    evidence and reliance on employee testimony. (Cottrell Prelim. Decl., ¶ 35). While Plaintiff is

5    confident that she would establish that common policies and practices give rise to the off-the-clock

6    work for the Class Members, Plaintiff faces the risk that the Court would decline to certify the Class

7    altogether, or for at least some claims. (*Id.*) As to Plaintiff's PAGA claims, Plaintiff would first need

8    to overcome similar procedural hurdles, including completing substantial amounts of written

9    discovery and depositions. (*Id.* at ¶ 36).

10           The monetary value of the Settlement represents a fair compromise given the specific risks and

11   uncertainties posed by continued litigation of these claims. (Cottrell Prelim. Decl., ¶¶ 28, 32, 37-38).

12   Resolving this case by means of the proposed Settlement will yield a prompt, certain, and substantial

13   recovery for the Class Members. (Cottrell Prelim. Decl., ¶ 39). This result will redirect the expenditure

14   of resources from draining the court system and Defendant's resources to providing relief to the Class

15   Members. (Cottrell Final Decl., ¶ 7). Accordingly, this factor also supports final approval.

16                   **4.  The Settlement Amount Favors Final Approval.**

17           In evaluating the fairness of a proposed settlement, courts compare the settlement amount with

18   the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec.*

19   *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction

20   of the maximum potential recovery. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th

21   Cir. 2009) (approving settlement amounting to 10% of total potential damages); *Officers for Justice*,

22   688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759,

23   at *21 (N.D. Cal. Oct 11, 2016) (approving wage-and-hour settlement representing 8.1% of the total

24   verdict value); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 U.S. Dist.

25   LEXIS 99966, at *17 (N.D. Cal. July 21, 2014) (approving settlement amounting to 5% of the total

26   value of the claims).

27           Here, the Court has already determined that "the terms of the Settlement appear to be within

28   the range of possible approval under Fed. R. Civ. P. 23, PAGA, and other applicable laws." (ECF No.

51, ¶ 1). These terms include the $5,000,000.00 Gross Settlement Amount and the $50,000.00 PAGA allocation. The Gross Settlement Amount of $5,000,000.00 represents 42% of the $11,946,406.00 that Plaintiff calculated for the core claims for unpaid meal and rest premiums, unpaid wages, and business expenses. (Cottrell Prelim. Decl., ¶ 27). This settlement amount is well within the reasonable standard considering the difficulty and risks presented by pursuing further litigation. (*See* ECF No. 51, ¶ 2).

Accordingly, the settlement amount, which represents a significant portion of the estimated recovery is a substantial result in light of the risks of litigation and supports final approval.

### 5.  The Parties Engaged in Significant Informal Discovery, Enabling Them to Make Informed Decisions Regarding Settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 U.S. Dist. LEXIS 95401, at *11 (D. Or. June 21, 2017); *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 946 (9th Cir. 2011); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the parties engaged in extensive informal pre-mediation discovery that has enabled both sides to assess the claims and potential defenses in this action. (Cottrell Prelim. Decl., ¶¶ 8, 10–11). As discussed at length in Plaintiff's Preliminary Approval Motion, this included extensive review of nearly 12,000 pages of documents, including time and pay records for the Class, handbooks and written policies, Plaintiff's personnel file, and time punch correction forms. (ECF No. 49, § II.B; Cottrell Prelim. Decl., ¶ 8). This allowed the parties to accurately assess the legal and factual landscape in order to weigh the prospect of settlement against continued litigation. (Cottrell Prelim. Decl., ¶ 33). Accordingly, this factor also favors final approval.

### 6.  Class Counsel are Highly Experienced.

Where counsel is well-qualified to represent the class and collective in settlement negotiations, based on their extensive class action experience and familiarity with the strengths and weaknesses of the case, courts find this factor to support a finding of fairness. *Wren*, 2011 U.S. Dist. LEXIS 38667,

1    at *31; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 U.S. Dist. LEXIS

2    7793, at *24 (C.D. Cal. Jan. 27, 2010) ("Counsel's opinion is accorded considerable weight."); *Bell*,

3    2017 U.S. Dist. LEXIS 95401 at *11 (considering the experience and views of counsel as one of the

4    factors guiding approval of settlement).

5              In reaching this Settlement, Class Counsel relied on their substantial litigation experience and

6    ability to effectively evaluate the viability of the claims, based on an extensive analysis of the effects

7    of Defendant's policies and practices on Class Members' pay. (Cottrell Prelim. Decl., ¶ 33). Counsel

8    believe that Plaintiff has achieved a strong settlement in light of all the risks and that the proposed

9    Settlement achieves an excellent result for Class Members and the Aggrieved Employees. (*Id.* at ¶¶

10   34, 40). This factor supports final approval.

11        **D.    The Court Should Finally Certify the Class.**

12             In its March 4, 2024 preliminary approval order, the Court granted conditional certification of

13   the Class, finding that all requirements of Fed. R. Civ. P. 23(a) and (b) have been satisfied. (ECF No.

14   51, ¶ 3). Now that the Settlement Notice has been disseminated, and the Settlement has been well

15   received, the Court should finally certify the Class for settlement purposes in its Final Approval Order

16   and Judgment. The Class meets all of the requirements for final approval, as set forth in Plaintiff's

17   motion for preliminary approval.

18             Here, there are 3,139 Participating Class Members, who have been identified from Defendant's

19   records and not requested exclusion, easily satisfying ascertainability and numerosity as joinder would

20   be impractical. *See* Fed. R. Civ. P. 23(a)(1); (Mitzner Decl., ¶ 11; Cottrell Prelim. Decl., ¶ 21).

21   Common questions of law and fact predominate here, satisfying Rule 23(a)(2) and (b)(3). (Cottrell

22   Prelim. Decl., ¶ 22). Defendant's policies apply to all non-exempt employees such that the wage-and-

23   hour violations alleged are borne of Defendant's standardized policies, practices, and procedures. This

24   uniformity creates pervasive issues of fact and law that are amenable to resolution on a class-wide

25   basis. (*Id.*)

26             Here, Plaintiff's claims are typical of those of all other Class Members. Interviews with Class

27   members and review of timekeeping and payroll data confirm that Plaintiff and the Class Members

28   were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected.

1   (Cottrell Prelim. Decl., ¶ 23). Thus, the typicality requirement is satisfied. Plaintiff's claims are in line

2   with the claims of the Class, and Plaintiff's claims are not antagonistic to the claims of Class Members.

3   (Cottrell Prelim. Decl., ¶ 24). Thus, Plaintiff adequately represents the Class Members' interests in this

4   litigation. Additionally, Rule 23(b)(3)'s requirements for class certification are met here where

5   Plaintiff demonstrates that common questions "predominate over any questions affecting only

6   individual members" and that a class action is "superior to other available methods for fairly and

7   efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

8         Here, as discussed in Plaintiff's Preliminary Motion for Approval, the common questions

9   predominate over any individualized questions concerning the Class Members. (Cottrell Prelim. Decl.,

10  ¶ 24). Resolution of Plaintiff's claims hinges on the uniform policies and practices of Defendant and

11  the resolution of the class claims would be achieved through the use of common forms of proof.[11]

12        Further, Plaintiff contends that the class-action mechanism is a superior method of adjudication

13  compared to a multitude of individual suits. (Cottrell Prelim. Decl., at ¶ 26). Here, the Class Members

14  do not have a strong interest in controlling their individual claims because they were not subjected to

15  individualized differences in the application of Defendant's policies, or the type of harm suffered. If

16  the Class Members were to proceed as individuals, their many suits would require duplicative

17  discovery and litigation drastically and unnecessarily increasing transaction costs. The Settlement

18  provides finality, ensures that workers receive redress for their relatively modest claims, and avoids

19  clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted

20  here, and the Court should finally certify the Class for settlement purposes.

21      **E.**    **The Settlement Provides a Fair and Reasonable Resolution for the State of**

22              **California and the Aggrieved Employees.**

23        In light of the risks discussed in this motion and under an analysis of similar PAGA settlements

24  (*see* ECF No. 49, p. 18 n.16), the Settlement's $50,000.00 PAGA allocation, which represents

25

26  ---
    [11] Although the amount of time worked off-the-clock may vary, that is a damages issue and should not
    impact class certification. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.

27  2010). The fact that individual inquiry might be necessary to determine the amount of time each
    employee spent changing into isolation suits, for example, despite Defendant's allegedly unlawful

28  policy, is not a proper basis for denying certification. *See Benton v. Telecom Network Specialists, Inc.*,
    220 Cal.App.4th 701 (2014).

1    approximately 1.9% of Defendant's total PAGA exposure, is a reasonable overall settlement sum.

2    (Cottrell Prelim. Decl., ¶ 29). This District is generally cautious about PAGA settlements representing

3    less than 1% of the total value of a PAGA claim but not regarding PAGA settlements representing 1%

4    or more of the total value of a PAGA claim. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d

5    959, 972–73 (N.D. Cal. 2019) (collecting cases discussing settlements of less than 1% of the total

6    value of a PAGA claim).

7        Moreover, because PAGA settlements must be viewed in light of PAGA's public purpose—

8    namely, augmenting the state's enforcement capabilities, encouraging compliance with Labor Code

9    provisions, and deterring noncompliance with California's labor laws—a court's focus is not the

10   amount employees ultimately receive from a settlement, but whether the settlement achieves PAGA's

11   objectives, even if it represents only a portion of an employer's total exposure. [12] *See Haralson*, 383

12   F.Supp.3d at 972–73. The $50,000.00 PAGA allocation serves these public purposes here.

13   Accordingly, the PAGA component of the Settlement is fair and reasonable and should be approved.

14       **F.    The Requested Attorneys' Fees and Costs are Reasonable.**

15       In a class-action settlement, the Court may award reasonable attorneys' fees and costs

16   authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Courts have the power to award

17   reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity

18   secures a "substantial benefit" for a class of persons. *See e.g., Staton v. Boeing Co.,* 327 F.3d 938, 967

19   (9th Cir. 2003). The two methods for determining reasonable fees in the class-action settlement context

20   are the "percentage of recovery" method and the "lodestar method." *Parkinson v. Hyundai Motor Am.*,

21   796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010).

22       It is in the Court's discretion which method to use. *Mercury Interactive Corp. Sec. Litig. v.*

23   *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) ("The district court may exercise its

24   discretion to choose between the lodestar and percentage method in calculating fees.") Though either

25

26   _____
     [12] *See, e.g., Ramirez v. Benito Valley Farms, LLC*, Case No. 16-CV-04708-LHK, 2017 U.S. Dist.
     LEXIS 137272 (N.D. Cal. Aug. 25, 2017); *see also Jordan v. NCI Grp., Inc.*, EDCV 16-1701 JVS
27   (SPx) 2018 U.S. Dist. LEXIS 25297 at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA
     settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable
28   in light of PAGA's policies and purposes.")

1    method is permissible, "the percentage-of-recovery approach is preferred when fees will be drawn

2    from a common fund." *Jones v. San Diego Metro. Transit Sys.*, No. 3:14-cv-01778-KSC, 2017 U.S.

3    Dist. LEXIS 198284, at *10 (S.D. Cal. Nov. 30, 2017). Accordingly, the Court should employ the

4    percentage-of-recovery method here and award Class Counsel the requested fee of one third of the

5    Gross Settlement Amount.

6        **1.    Class Counsel's Fee Request is Fair and Reasonable and Merits Upward**

7              **Adjustment from the 25% "Benchmark."**

8        Class Counsel obtained an excellent result for the Class Members and the Aggrieved

9    Employees in the face of significant risk and therefore should be awarded the requested 30% of the

10   total settlement fund. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

11   33 1/3% of the total settlement value, with 25% considered the benchmark." *Vasquez v. Coast Valley*

12   *Roofing*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (granting 33.3% fee award and collecting cases)

13   (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000), *Hanlon*, 150 F. 3d at 1029, and *Staton*,

14   327 F.3d at 952). However, the appropriate percentage varies depending on the facts of each case, and

15   in "most common fund cases, the award exceeds that benchmark." *Vasquez, supra*, at 491–92 (citations

16   omitted); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of

17   33% of $12 million common fund). The Ninth Circuit instructs that "[t]he 25% benchmark, though a

18   starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.,* 290 F.

19   3d 1043, 1047 (9th Cir. 2002). The choice of "the benchmark or any other rate must be supported by

20   findings that take into account all of the circumstances of the case." *Vizcaino, supra*, at 1048.

21       Factors that may be relevant in determining whether a requested fee is reasonable under the

22   circumstances of the case are: (1) the results achieved; (2) the risk of litigation; (3) the skill required

23   and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the

24   Plaintiff; and (5) awards made in similar cases. *Vizcaino, supra*, at 1048–50 (the "*Vizcaino* factors");

25   *see also Hightower v. JPMorgan Chase Bank, N.A*., No. CV 11-1802 PSG (PLAx), 2015 U.S. Dist.

26   LEXIS 174314, at *37 (C.D. Cal. Aug. 4, 2015). Other courts have additionally considered (6)

27   reactions from the class and, in the courts' discretion, (7) a lodestar cross-check. *See, e.g., Barnes v.*

28

1    *The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088, at *13–14 (N.D. Cal.

2    Aug. 1, 2013). Here, each of these factors weighs in favor of the requested fee award.

3                    **a.    The Results Achieved Support the Fee Request.**

4            "The overall result and benefit to the class from the litigation is the most crucial factor in

5    granting a fee award." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008). As

6    discussed above, Plaintiff has achieved an excellent non-reversionary Settlement that provides an

7    average *net* recovery of $1,027.90 per Class Member and constitutes 42% of Defendant's estimated

8    exposure for the core claims. (*See supra*, § III.A). Courts routinely approve settlements providing

9    lower recoveries, and these terms favor upward departure from the benchmark here. *See Carlin v.*

10   *DairyAmerica, Inc*., 380 F.Supp.3d 998, 1022 (E.D. Cal. 2019) (settlement that recovered significant

11   percentage of estimated damages on a non-reversionary basis was an "exceptional result" weighing in

12   favor of a higher-than-benchmark award of 33.3%, or $13.3 million).[13]

13           Courts have also recognized the benefits to class members of receiving payments sooner rather

14   than later, where litigation could extend for years, thus significantly delaying any payments to class

15   members. *See California v. eBay, Inc.*, No. 5:12-cv-05874-EJD, 2015 U.S. Dist. LEXIS 118060, at

16   *12 (N.D. Cal. Sept. 3, 2015) ("Since a negotiated resolution provides for a certain recovery in the

17   face of uncertainty in litigation, this factor weighs in favor of settlement."); *Oppenlander v. Standard*

18   *Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in hand instead

19   of a prospective flock in the bush.") Here, the Settlement was achieved early in the litigation timeline

20   and will result in a guaranteed and timely recovery by the Class Members and the Aggrieved

21   Employees. Thus, this factor supports the requested attorneys' fee award of 30% of the Gross

22   Settlement amount or $1,500,000.00.

23

24

25

26   [13] *See also, e.g., McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist.
     LEXIS 103666, at *21–22 (C.D. Cal. July 2, 2012) (approving settlement providing average net
27   recovery of $372.00 per class member and noting that the "result is no doubt favorable"); *Flores v.
     ADT LLC*, No. 1:16-cv-0029-AWI-JLT, 2018 U.S. Dist. LEXIS 31784, at *10 (E.D. Cal. Feb. 27,
28   2018) (finally approving settlement and one-third attorneys' fee award where average net recovery
     was $805 per class member).

**b.      The Risks of Continued Litigation were Substantial.**

Plaintiff detailed the risks of continued litigation above (*see supra*, § IV.C.3) and in the Preliminary Approval Motion (ECF No. 49, §III.C). Achieving the substantial Settlement early on, despite these risks, attests to the skill of Class Counsel and supports the requested fee award.

**c.      Class Counsel have Demonstrated Skill Based on Experience in this Area of Law and Dedication Throughout this Litigation.**

Prosecuting class actions requires an "extraordinary commitment of time, resources, and energy from Class Counsel," and often settlements "simply [are not] possible but for the commitment and skill of Class Counsel." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *4 (N.D. Cal. Apr. 22, 2010). Additionally, as described above, Class Counsel took on this case despite its complexity and risks, diligently prosecuted the case, and negotiated a substantial recovery. This factor supports Class Counsel's fee request.

In addition, Class Counsel are highly experienced attorneys who focus on wage-and-hour class actions. (Cottrell Prelim. Decl., ¶ 40). Class Counsel has been recognized as a leading plaintiffs' firm nationally for their work on behalf of employees in wage-and-hour litigation. (*Id.* at ¶ 5). Class Counsel's skill is reflected in their ability to hone in on the issues such as donning and doffing time expended for isolation PPE that is off the clock, but consistent in the amount of time across individual Class Members. Identifying the strength of the typically difficult to prove claims enabled Class Counsel to achieve a recovery representing 42% of the estimated exposure for the core claims efficiently and timely. Accordingly, Class Counsel's expertise and skill in this area of law, coupled with their willingness to take on potentially risky cases where unique facts support the claim substantial damages, justifies the fee request.

**d.      Class Counsel Showed Dedication to the Class Through Accepting and Prosecuting the Action on a Contingency Basis.**

The contingent nature of litigating a class action and the financial burden assumed typically justifies an increase to 30% from the 25% benchmark, as counsel litigates with no payment and no

1    guarantee that the time or money expended will result in any recovery.[14] Here, Class Counsel

2    undertook all the risk of this litigation on a completely contingent-fee basis, expending time and

3    incurring expenses with the understanding that there was no guarantee of compensation or

4    reimbursement. (Cottrell Prelim. Decl., ¶ 47). Class Counsel expended resources for expert data

5    analysis and utilized the carefully developed internal capacity for class wide inquiry and case

6    development to assure a high level of recovery as efficiently as possible. Thus, the award for fees

7    should be in accordance with the excellent recovery and support of the class rather than with weighted

8    consideration of the costs incurred or opportunity costs to the firm.

9            e.      **Class Counsel's Request for a Percentage of the Common Fund is**

10                   **Consistent With Awards Common to This Type of Public Interest**

11                   **Litigation.**

12           District courts in the Ninth Circuit have recognized that the contingent nature of legal

13   representation can support a request of approximately 30% of the settlement fund, as counsel assumes

14   the entire risk of attorney time and receives no compensation during the course of litigation.[15] Courts

15   in the Ninth Circuit customarily approve payments of attorneys' fees amounting to one-third of the

16   common fund in comparable wage-and-hour class actions.[16]

17

18   [14] *See Hightower*, 2015 U.S. Dist. LEXIS 174314, at *31 ("[A]ny law firm undertaking representation
     of a large number of affected employees in wage and hour actions inevitably must be prepared to make
19   a tremendous investment of time, energy, and resources with the very real possibility of an
     unsuccessful outcome and no fee recovery of any kind.") (*citing Vizcaino*, 290 F.3d at 1051) (internal
20   quotation marks omitted).

21   [15] *See, e.g., Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 U.S. Dist. LEXIS
     45326, at *13 (E.D. Cal. Mar. 10, 2021) (finding 35% fee award to be reasonable because "[c]ounsel
22   accepted the representation on a contingency basis when the outcome was uncertain and litigation
     risky"); *Brown v. Papa Murphy's Holdings Inc.*, No. C19-5514 BHS, 2022 U.S. Dist. LEXIS 79209,
23   at *8 (W.D. Wa. May 2, 2022) (increasing benchmark to 31.5% partially because "counsel undertook
     the class action on a purely contingent basis");

24   [16] For example many other courts have granted similar awards. *See, e.g., Van Vranken v. Atlantic
     Richfield Co.*, 901 F.Supp. 294, 297–98 (N.D. Cal. 1995) ("Class Counsel have also cited 73 district
25   court opinions in which fees in the range of 30–50 percent of the common fund were awarded.");
     *Perkins v. Singh*, No. 3:19-cv-01157-AC, 2021 U.S. Dist. LEXIS 211578 at *8 (D. Or. Nov. 2, 2021)
26   (finding counsel's request for attorney's fees equal to 33% of the fund reasonable and justified under
     the *Vizcaino* factors and the trend in numerous courts to increase the benchmark); *Romero v. Producers
27   Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 13,
     2007) (finding that "fee <u>awards in [wage and hour] class actions average around one-third of the
28   recovery</u>" and awarding fees in that amount)(emphasis added).

1  Substantial fee awards encourage attorneys to take on risky cases on behalf of clients who
2  cannot pay hourly rates and would therefore not otherwise have realistic access to courts. That access
3  is particularly important for the effective enforcement of public protection statutes, such as the wage
4  laws at issue here. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("Private suits provide a
5  significant supplement to the limited resources available to [government agencies] for enforcing
6  [public protection] laws and deterring violations.")

7  By incentivizing plaintiffs' attorneys to take on risky, high-stakes, and important litigation, and
8  devote themselves to it fully, fee awards serve an important purpose and extend the access of top legal
9  talent to constituencies such as low-wage workers who would otherwise not be able to confront
10  employers, who are themselves represented by top-rated attorneys. In this case, although the risks were
11  significant, Plaintiff and Class Counsel committed themselves to developing and pressing the Class
12  Members' claims to enforce those employees' rights and maximize their recovery. The contingent
13  nature of the litigation therefore supports a one-third fee award.

14                              **f.      The Reaction of the Class Supports the Requested Award.**

15  "It is established that the absence of a large number of objections to a proposed class action
16  settlement raises a strong presumption that the terms of a proposed class settlement action are
17  favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523,
18  528–29 (C.D. Cal. 2004). Here, the Settlement Notice, which includes notice of the fees to be
19  requested, was sent by U.S. Mail to approximately 3,578 recipients on April 1, 2024. (Mitzner Decl.,
20  ¶ 5). The notice period ended on May 17, 2024. To date, only one Class Member has objected to the
21  amount of their anticipated Settlement Award, and only two Class Members have requested exclusion.
22  (Mitzner Decl., ¶¶ 8, 9). The lack of objections by Class Members to the Settlement (including the fee
23  provision) demonstrates the Class's approval of the results in this case and further bolsters counsel's
24  reasonable fee request.[17]

25  _____

26  [17] *See Mossberg v. Indymac Fin.*, No. CV07-1635-GW(VB1(x), 2013 U.S. Dist. LEXIS 205686, at
   *20 (C.D. Cal. Jan 28, 2013) ("The Court has received zero objections to the settlement and
27  fee/expense applications from the class members. This dearth of opposition perhaps speaks most
   loudly in favor of approving the fee and expense requests."); *Gomez v. H & R Gunlund Ranches*, No.
28  CV F 10-1163 LJO MJS, 2011 U.S. Dist. LEXIS 135424 at *15 (E.D. Cal. Nov. 22, 2011) (awarding
   46% fee award in part "[b]ased on the absence of opposition").

**1.     A Lodestar Crosscheck, if Applied, Would Reflect the Efficiency of this Early Resolution.**

Federal courts have the discretion to employ (or decline to employ) a "lodestar cross-check" on a request for a percentage-of-the-fund fee award. However, in *Vizcaino*, the Ninth Circuit made clear that this cross-check is not required because it disincentivizes early resolution.[18] Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Schneider v. Chipotle Mexican Grill, Inc.,* 336 F.R.D. 588, 600 (N.D. Cal. 2020) (citing *Laffitte v. Robert Half Int'l Inc.,* 1 Cal.5th 480, 506 (2016)).

While Plaintiff submits that a cross-check is not necessary in this case, if the Court were to employ one, the cross-check would further support that this was an excellent result at a relatively early stage of litigation, which in turn supports final approval as a reasonable timely recovery. A summary of the lodestar and descriptions of the nature of work performed includes that Class Counsel has spent at least a combined 577.60 hours litigating this Action, for a current lodestar total of $445,728. (Cottrell Final Decl., ¶ 8) (Declaration of Joanna Ghosh ("Ghosh Decl.") ¶¶ 3-4). These numbers do not include all the work remaining to bring the Settlement to a close, such as, editing and submission of this motion, communicating with Class Members regarding their settlement payments and the release and how such payments were calculated, addressing remaining settlement administration matters with the settlement administrator, and responding to Class Members' inquiries concerning tax forms and withholdings. (Cottrell Final Decl., ¶ 8). Class Counsel's present combine lodestar figure represents a resulting multiplier of 3.37. (Cottrell Final Decl., ¶¶ 8-9.) (Ghosh Decl., ¶¶ 3-4).

Although this multiplier is on the high end of the "customary range" for multipliers in class-action lawsuits, it bears many other indicia of reasonableness. *See Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922, at *20–21 (N.D. Cal. Nov. 28, 2012) (citing *Vizcaino*, 290 F.3d 1043, 1051 n.6); *see also Vizcaino*, *supra*, at 1051 n.6, appx. (collecting cases and finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6–19.6). In *Johnson v.*

---

[18] *Vizcaino*, 290 F.3d at 1050 & n. 5 (noting that while "primary basis of the fee award remains the percentage method," lodestar "may" be useful, but that it is "merely a cross check" and "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case")(emphasis added).

1  *Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D.
2  Cal. May 11, 2018), the court found a multiplier of 4.37 to be reasonable.

3      Lodestar figures may be adjusted upwards based on "several factors including the quality of
4  the representation, the benefit obtained for the class, the complexity and novelty of the issues
5  presented, and the risk of nonpayment." *Hanlon,* 150 F.3d at 1029. The primary consideration in
6  reasonableness is the benefit to the class. Here, the exceptional results at an early stage of the litigation
7  leads to an inflated multiplier that does not accurately reflect the reasonableness of the underlying fee
8  request given the benefit to the class achieved. *Cuellar v. First Transit Inc.,* No. 8:20-cv-01075-JWH-
9  JDE, 2024 U.S. Dist. LEXIS 3747, at *35-36 (C.D. Cal. Jan. 8, 2024)[19] These considerations,
10  discussed above with regard to the *Vizcaino* factors, all support the 3.37 multiplier that Class Counsel
11  seeks here.

12      **2.  The Court Should Approve Class Counsel's Costs.**

13      In addition to reasonable attorneys' fees, Class Counsel may receive reimbursement for
14  reasonably incurred costs. *See, e.g.*, 29 U.S.C. § 216(b); *Tuttle v. Audiophile Music Direct*, No. C22-
15  1081JLR, 2023 U.S. Dist. LEXIS 229241 at *44 (W.D. Wash. Dec. 26, 2023) (concluding that "[c]lass
16  counsel may recover reasonable expenses that would normally be charged to a fee paying client" and
17  approving counsel's request as reasonable and necessary); *Vianu v. AT&T Mobility LLC*, No. 19-cv-
18  03602-LB, 2022 U.S. Dist. LEXIS 203520, at *25 (N.D. Cal. Nov. 8, 2022) (citing *Harris v.*
19  *Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994)).

20      Here, Class Counsel's current costs total $8,990.63. (Cottrell Final Decl., ¶ 10). Class
21  Counsel's costs include reasonable out-of-pocket expenditures and do not account for additional filing
22  or mailing fees that will accrue in the coming weeks as final settlement administration occurs. The
23  expenses incurred in this litigation to date are of the type typically billed by attorneys to paying clients
24  in the marketplace and include such costs as court costs, filing fees, mediation fees, copying and
25  printing costs, computerized research, and electronic document hosting. (*Id.* at ¶ 11). These costs are

26
27  [19] "Asking for 30% of the Settlement Fund with a 3.84 to 3.97 lodestar multiplier, seems quite high if considered in a vacuum. But in view of the facts that similar wage-and-hour class actions tend to award 30% fees and that Class Counsel's low hourly rates may account for an inflated lodestar multiplier,
28  Class Counsel's requested 30% fee is reasonable."

routinely found to be reasonable and awarded reimbursement by courts in the Ninth Circuit. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177 (S.D. Cal. 2007) (awarding reimbursement for expenses for meals, hotels, and transportation; photocopies; telephone; filing fees; messenger and overnight delivery; online legal research; and mediation fees, which the court found to be "reasonable and necessary"). Class Counsel therefore requests reimbursement of costs in the amount of $8,990.63.

G.    **The Court Should Approve the Proposed Schedule.**

Lastly, Plaintiff respectfully requests that the Court approve the implementation schedule set forth in the Proposed Final Approval Order filed herewith.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Settlement, in accordance with the schedule above.

Date: July 12, 2024                    Respectfully Submitted,


                                 /s/ Carolyn H. Cottrell
                                Carolyn Hunt Cottrell
                                Ori Edelstein
                                Laurel N. Holmes
                                **SCHNEIDER WALLACE**
                                **COTTRELL KONECKY LLP**

                                *Attorneys for Plaintiff and the Putative Class,*
                                *and on behalf of the State of California*
                                *and aggrieved employees*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that I caused the foregoing document to be electronically filed with the Clerk

3  of the Court for the United States District Court for the Northern District of California, by using the

4  Court's CM/ECF system on July 12, 2024. Service will be accomplished on all parties by the Court's

5  CM/ECF system.

6

7                          */s/ Carolyn H. Cottrell*
                        Carolyn H. Cottrell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28